CHICAGO—FIRST DISTRICT—FEBRUARY, 1912.   545

The Order of Columbian Knights v. Schwemm, 167 Ill. App. 545.

The judgment of the Municipal Court will be affirmed.

*Judgment affirmed.*

## The Order of Columbian Knights, Plaintiff in Error, v. Matilda Schwemm, Defendant in Error.

## Gen. No. 16,192.

INSURANCE—*when suicide established.* Held, notwithstanding a coroner's verdict finding that the insured came to his death accidentally, a verdict not otherwise supported will be set aside and a finding of the fact of suicide will be entered where the evidence clearly demonstrates that such was the cause of the death of the insured.

Error to the Municipal Court of Chicago; the HON. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed with finding of fact and judgment here. Opinion filed February 21, 1912.

CHARLES A. WARREN, for plaintiff in error.

WILLIAM S. NEWBURGER, for defendant in error.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

In December, 1902, plaintiff in error issued to Charles F. Schwemm, the husband of defendant in error, its benefit certificate for $1,000, payable to defendant in error. Schwemm died December 9, 1908, and plaintiff in error, having refused to pay the full amount of said certificate, upon the ground that the insured came to his death by suicide, suit was instituted against it in the Municipal Court to recover the same. There have been three trials of the case and three verdicts against plaintiff in error for the full amount of the certificate. The first two verdicts were

546    APPELLATE COURTS OF ILLINOIS.

The Order of Columbian Knights v. Schwemm, 167 Ill. App. 545.

set aside, but the last verdict was permitted to stand and judgment was entered thereon for $1,000.

Section 333 of the general laws of plaintiff in error, which, it is conceded, entered into and became a part of the contract of insurance, is as follows:

"Sec. 333.    Suicide.

It is particularly stipulated that death by suicide, whether the member be sane or insane, is a risk which this society does not assume, and which it expressly declares is not contemplated or covered by the contract between itself and the member; but, as a benefit which the order bestows upon the beneficiary as carrying out its charitable objects and purposes, it will pay to such beneficiary of a member dying by suicide after three years from the date of such member's initiation, a sum of money equivalent to one-half of the amount which the beneficiary would have been entitled to receive had the member died a natural death or otherwise than by his own hand or act; and in the event of such death by suicide, whether the member be sane or insane, within said period of three years, there shall be payable to the beneficiary a sum of money equal to all the assessments paid by the member to this society and no more."

The only question presented for our consideration is whether or not the insured came to his death by suicide.

It is uncontroverted that on the day preceding his death the insured drank chloroform, and that the direct cause of his death was poisoning by the chloroform so drunk by him.

As bearing upon the question of the cause of the insured's death, the only evidence in the record offered on behalf of defendant in error is the verdict of the coroner's jury finding that the insured, "came to his death * * * from chloroform poisoning; from the evidence offered, the jury are of opinion that this is an accidental case, the deceased using the said drug on October 8, 1908, as was his custom for the allevia-

tion or with the view of stopping a case of tooth ache, from which he was suffering at the time.''

On behalf of plaintiff in error, the competent evidence in the record is substantially as follows:

John Doody, a police officer, testifies:

''On October 8, 1908, I was stationed at Randolph and Michigan avenue. I met Charles F. Schwemm on October 8, 1908, at the corner of Randolph and Michigan avenue, about 3:15 or 3:20 in the afternoon. He was sitting on a stone step on the sidewalk. I went and asked what was the matter. I thought, perhaps, he was under the influence of liquor. He says, 'Officer, I am after taking a dose of poison.' I said, 'Where is the bottle?' He said: 'I threw it over the viaduct.' He said: 'I am tired of living and I want to do away with myself.' He didn't state how much he took. He said he had taken poison. I wanted his name and where he lived. He said: 'Officer, don't ask me.' He pulled a card out of his pocket. He said: 'Notify this man, he is a friend of mine; I am liable to drop in five minutes.' It was an undertaker's card. I told him to put it back in to his pocket and see what the wagon men would do. Then I went to the station precinct patrol box and called a wagon in a hurry. We put Schwemm in the wagon with officer Flannigan.''

Charles P. Flannigan, a police officer, testifies:

''I saw Charles F. Schwemm on the day in question that he was taken to the county hospital, the 8th of October. It was in the afternoon, about 3:20, the police patrol wagon received a call to come to Randolph and Michigan avenue and I responded. I had charge of the patrol wagon. Arriving there, I found the deceased in charge of Officer Doody. He told me that the man had taken chloroform and I placed him in the patrol wagon and ordered the driver to go to the county hospital. On the way to the hospital I asked what the matter was. He said: 'I took chloroform.' I asked him why he took it; he said he wanted to die. At first he refused to tell me; he didn't want to tell me what the trouble was. He gave

.548      Appellate Courts of Illinois.

The Order of Columbian Knights v. Schwemm, 167 Ill. App. 545.

me a card and wanted me to notify an undertaker. I told him that he was not going to die; that he didn't need an undertaker; that he needed a doctor; so I proceeded to the county hospital and delivered him there. He said it was a small bottle of chloroform, and that he threw it over the Illinois Central viaduct. We hurried him to the County Hospital and turned him over to the doctors in the receiving ward.''

Edward Flannigan, a police officer, testifies:

''I met Charles F. Schwemm on October 8 or 9 at the corner of Randolph and Michigan avenue. We took him to the County Hospital. He said he had taken poison—said he had taken chloroform. There was some remark that he had taken two ounces, but I don't know that he said so. He said he threw the bottle over the viaduct. That was about 3:15 or 3:20 p. m. I did not assist Schwemm to the patrol wagon. I was just in the wagon. Officers Flannigan and Dugan took him to the patrol wagon. He sat in the wagon on the side. I got off at Paulina street. I was not on duty. I did not converse with Schwemm on the way to the hospital, but I heard him and Officer Flannigan talk. Flannigan asked him what was the matter. He said he had taken chloroform; that he was tired of living and wanted to die.''

William H. Dugan, a police officer, testifies:

''I heard Schwemm say in the wagon that he took poison, drank chloroform. He said he wanted to die.''

Dr. George T. Johnson, an attending physician at the Cook County Hospital, testifies:

''I saw Charles F. Schwemm in Ward 26 of the County Hospital on the date before his death, about the middle of the afternoon. He was brought to the ward in a wheel chair and Dr. Courtenay and I were up there at the time. He was brought into the examining room and was asked what the trouble was. He said he had taken chloroform, about an ounce and a half. His breath smelled very strong of alcohol, more of alcohol than of chloroform. I asked him if he had been drinking and he said he had been drink-

ing quite heavily of late. Preparations were made to wash out his stomach and this was done and he was put to bed and medicine given him. The usual treatment in such cases was given him. Dr. Courtenay was present. The stomach pump was used. His stomach was washed out. He objected to the use of the stomach pump.''

Dr. Gordon Courtenay, also an attending physician at the same hospital, testifies:

''I met Charles F. Schwemm on the afternoon of October 8th in the county hospital. The ward was shared by Dr. Johnson and Dr. Wellington, on one service, and myself and a senior, on the other, and I happened to be in the ward at the time attending to my work when Schwemm was brought in. He was taken into the examining room and I went in to assist Dr. Johnson. I helped to pass the stomach pump upon Schwemm and helped to treat him for chloroform poisoning. When I went into the room, I asked what was the matter with the man, and he and Dr. Johnson may have said it about the same time, said that he had taken chloroform. Schwemm said so too; said he had taken an ounce and a half. He said he wanted to die; that he was tired of living. I helped Dr. Johnson and the lady nurse to pass the stomach pump on him and after that he was taken in and put to bed. I said he ought to have the stomach pump passed to relieve him. He said he didn't want it, he wanted to die.''

A mere cursory examination and consideration of the evidence irresistibly compels us to the conclusion that the insured came to his death by suicide, and it is incomprehensible how three juries could have arrived at any other conclusion, save upon the theory that they were improperly influenced by the wholly unwarranted attack on plaintiff in error's witnesses.

An effort is made on behalf of defendant in error in this court to discredit the witnesses for plaintiff in error by showing that they had been paid by plaintiff in error for their attendance as witnesses upon the

previous trials of the case, but the evidence discloses that the amount so paid said witnesses, was not more than they were legally entitled to receive for the number of days they were actually in attendance as such witnesses.

The judgment is reversed with a finding of fact to be incorporated in the judgment of this court, that Charles F. Schwemm came to his death by suicide, and upon such finding of fact judgment will be entered in this court in favor of defendant in error and against plaintiff in error for $500, being the amount which defendant in error, by reason of the death of the insured by suicide, is entitled to recover under the contract of insurance sued on.

Defendant in error will pay the costs in this court. *Reversed with finding of fact, and judgment here.*